IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| SCOTT SHULTZ, | ) |
| Plaintiff, | ) |
| v. | ) No. 22-CV-04056-WJE |
| CITIBANK, N.A., | ) |
| Defendant. | ) |

## **ORDER**

Pending before the Court is Defendant Citibank, N.A.'s ("Citibank") Motion to Compel Arbitration and Stay Proceedings ("Motion"), and suggestions in support thereof. (Docs. 7, 8). Plaintiff Scott Shultz has filed suggestions in opposition (Doc. 13), to which Citibank has timely replied (Doc. 14). Moreover, with leave of Court, Mr. Shultz has filed a surreply in opposition. (Doc. 19). The issue is now ripe for consideration. For the reasons that follow, the Motion is granted.

### **I. Background**

This case arises out of an employment-related dispute, where Mr. Shultz claims that he faced age discrimination, disability discrimination, and retaliation under the Missouri Human Rights Act ("MHRA") during his employment with Citibank. (Doc. 1-2, pp. 2-11).

In 2002, Mr. Shultz signed Citibank's Employee Handbook Receipt Form, which states, "I understand that this *Handbook* contains a provision that requires me to submit employment-related disputes to binding arbitration (see Appendix)." (Doc. 8-2, p. 1) (emphasis in original). Appendix A of the Employee Handbook reads:

> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes . . . between you and Citi . . . Therefore, you are waiving your right to bring your disputes in court or to have your disputes heard by a jury.

(Doc. 8-1, p. 1). Mr. Shultz signed the same form again in 2004. (Doc. 8-3, p. 1). In 2009, 2011, 2012, 2014, and 2017, he digitally signed Citibank's Online Employee Handbook Acknowledgment Form, which contains a similar provision. (*Id.*, pp. 2-6). Mr. Shultz signed the most recent version in 2017, which reads, "I UNDERSTAND THAT THE EMPLOYMENT ARBITRATION POLICY, WHICH IS A STANDALONE AGREEMENT CONTAINED IN APPENDIX A, IS A BINDING AGREEMENT BETWEEN CITI AND ME . . . that require[s] me and Citi to submit employment-related disputes to binding arbitration." (*Id.*, p. 6).

On May 4, 2021, Mr. Shultz filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR"). (Doc. 1-2, p. 3). After the MCHR issued a notice of Mr. Shultz's right to sue, he filed suit in state court on January 28, 2022. (*Id.*, pp. 3, 12). Citibank subsequently removed the case to this Court on April 14, 2022, and filed the instant Motion, arguing that Mr. Shultz agreed to arbitrate any employment-related claims by signing the Employee Handbook Receipt Forms and Online Employee Handbook Acknowledgment Forms. (Docs. 1, 7).

## II. Legal Standard

This matter is governed by the Federal Arbitration Act ("FAA"), which provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA, enacted in response to judicial hostility to arbitration, "establishes 'a liberal federal policy favoring arbitration agreements.'" *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (quoting *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018)). "Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists 'and the dispute falls within the scope of that agreement.'" *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (quoting *Berkley v. Dillard's, Inc.*, 450 F.3d 775, 777 (8th Cir. 2006)). "Thus, the primary inquiry is

'whether the parties formed a valid contract that binds them to arbitrate their dispute.'" *Duncan*, 20 F.4th at 402 (8th Cir. 2021) (citing *Shockley*, 929 F.3d at 1017). "[T]he party seeking to compel arbitration . . . carries the burden to prove a valid and enforceable agreement." *Shockley*, 929 F.3d at 1017 (citing *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 287 (Mo. Ct. App. 2016)). Where a valid arbitration agreement applies, courts are generally required "to stay an action pending an arbitration, rather than dismiss it." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (citing 9 U.S.C. § 3).

### III. Analysis

A. **Competent and admissible evidence establishes a valid agreement to arbitrate.**

Citibank argues that it has presented competent and admissible evidence sufficient to demonstrate an enforceable arbitration agreement by attaching the Employee Handbook Receipt Forms and Online Employee Handbook Acknowledgment Forms. (Doc. 14, p. 3). Mr. Shultz counters that the three exhibits attached to the Motion are not accompanied by a sworn affidavit, so there is no competent and admissible evidence of the existence of an arbitration agreement between the parties. (Doc. 13, pp. 7-8).

Whether evidence is properly received is a procedural issue governed by federal law. *See Pierce v. Plains Com. Bank*, No. 11-01222-CV-W-BP, 2012 WL 5992730, at *2 (W.D. Mo. Nov. 29, 2012) (citing Fed. R. Evid. 101(a), 1101(a)-(b); *Sprynczynatyk v. Gen. Motors Corp.*, 771 F.2d 1112, 1122 (8th Cir. 1985)). Various courts of appeals have uniformly held that in evaluating evidence in support of a motion to compel arbitration, federal courts apply "a standard similar to that applicable to motions for summary judgment." *Umbenhower v. Copart, Inc.*, No. 03-2476-JWL, 2004 WL 2660649, at *2 (D. Kansas Nov. 19, 2004) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Par-*

*Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980); *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 66-67 (D.D.C. 2003); *Dr.'s Assocs., Inc. v. Distajo*, 944 F. Supp. 1010, 1014 (D. Conn. 1996)). Courts, however, do not extend "the Rule 56 requirement that the parties submit evidence in a form that would be admissible at trial into the context of a motion to compel by requiring the arbitration agreement itself to be authenticated by affidavit in the absence of a genuine dispute about the authenticity of the agreement." *Id.* at *6 n.4.

Absent in this case is a genuine dispute about the authenticity of the arbitration agreement. Mr. Shultz does not assert that the arbitration agreement itself did not exist or was not actually signed by him. (*See* Doc. 13, pp. 7-8; Doc. 19, pp. 1-3). Further, the Court is unaware of any federal case that extends the summary judgment requirement that factual positions must be supported by a sworn affidavit in the context of a motion to compel arbitration. *See Umbenhower*, 2004 WL 2660649, at *6 n.4; *see also* Fed. R. Civ. P. 56. "[I]n the absence of a genuine dispute about the authenticity of the agreement," this Court finds that there is competent evidence to prove the existence of the agreement, without a sworn affidavit. *Umbenhower*, 2004 WL 2660649, at *6 n.4. Moreover, "it simply makes no sense for the court to ignore the agreement simply because defendant[] failed to authenticate the agreement." *Id.* at *6.

B. **The parties have formed a valid agreement to arbitrate.**

Citibank claims that it entered into a valid arbitration agreement because: (1) Citibank offered to arbitrate all employment-related disputes between Mr. Shultz and Citibank; (2) Mr. Shultz accepted by signing the Employee Handbook Receipt Forms and Online Employee Handbook Acknowledgment Forms; and (3) both parties agreed to arbitrate any employment-related disputes, which is valid consideration. (Doc. 8, pp. 5-8). Mr. Shultz argues that there is no evidence of an enforceable agreement between the parties because there was no offer to contract,

and the agreement is not supported by consideration due to a modification provision within the arbitration policy. (Doc. 13, pp. 8-15).

"State contract law governs whether an arbitration agreement is valid." *Lyster v. Ryan's Fam. Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001) (citing *Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998)). "Missouri law requires (1) an offer, (2) acceptance, and (3) consideration to form a valid and enforceable contract." *Shockley*, 929 F.3d at 1017 (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc)). First, "[a]n offer is made when the offeree . . . would 'reasonably believe that an offer has been made.'" *Id.* (quoting *Jackson*, 497 S.W.3d at 288). Missouri courts have held that acknowledgment forms constitute a valid offer when they "[use] contractual terms such as 'I understand,' 'I agree,' [']I [agree] to abide by and accept,' 'condition of employment,' 'final decision,' and 'ultimate resolution.'" *Berkley*, 450 F.3d at 777 (quoting *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997)). Second, "[a]n acceptance is present when the offeree signifies assent to the terms of the offer in a 'positive an unambiguous' manner." *Shockley*, 929 F.3d at 1017 (quoting *Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. Ct. App. 2011)). "Third, an agreement must have an exchange of consideration: a promise to do something or refrain from doing something, or the transfer of something of value to the other party." *Id.* at 1017-18 (citing *Baker*, 450 S.W.3d at 774). "[B]ilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability." *Baker*, 450 S.W.3d at 776 (citing *Sumners v. Serv. Vending, Co., Inc.*, 102 S.W.3d 37, 41 (Mo. Ct. App. 2003)).

The Court finds a valid and enforceable arbitration agreement existed between Mr. Shultz and Citibank. Not only have federal courts in Missouri held that the exact same language here constitutes a valid and enforceable arbitration agreement, but all the elements required to form a

valid and enforceable contract are present. *See Carlisle v. CitiMortgage, Inc.*, No. 4:06-CV-677-CAS, 2007 WL 1557411, at *2 (E.D. Mo. May 25, 2007) (citing *Bobby Tripp v. Citicorp Credit Servs., Inc.*, 04-0497-CV-W-FJG (W.D. Mo. May 24, 2005); *Albert Mellon IV v. Citicorp Credit Servs., Inc.*, 04-6078-CV-SJ-SOW (W.D. Mo. Nov. 9, 2004)).

First, the most recent Online Employee Handbook Acknowledgment Form contains the contractual term, "I understand." (Doc. 8-3, p. 6); *see Berkley*, 450 F.3d at 777. Unlike in *Jackson*, where the Court held that "the employer's use of the terms 'policy' and 'acknowledgment' was a 'linguistic smokescreen' that prevented the employee's 'awareness of the objective intent of the Employer (the offeror) to enter into an agreement,'" the acknowledgment form here clearly refers to the arbitration policy as a binding agreement. *Miller v. Securitas Sec. Servs. USA Inc.*, 581 S.W.3d 723, 730 (Mo. Ct. App. 2019) (quoting *Jackson*, 497 S.W.3d at 289). Further, unlike *Jackson*, the acknowledgment form here does not include any language indicating that the arbitration policy would apply even if Mr. Shultz did not sign the form. *See Jackson*, 497 S.W.3d at 289-90. Thus, this Court finds that the Online Employee Handbook Acknowledgment Form was a valid offer.

Second, by signing the agreement, Mr. Shultz accepted the offer to arbitrate in a positive and unambiguous manner, which neither party contests. (*See* Docs. 8, 13, 14, 19).

Third, both parties promised to submit their claims to arbitration, which constitutes consideration to support a bilateral contract. *See Baker*, 450 S.W.3d at 776. Modification provisions, however, can render such bilateral contracts illusory. *Id.*; *see also Colton v. Hibbett Sporting Goods, Inc.*, No. 2:16-CV-04002-NKL, 2016 WL 3248578, at *3 (W.D. Mo. June 13, 2016). The modification provision in the Employee Handbook reads, "amendments [to the policy] may be made by publishing them in the Handbook or by separate release to employees and shall

be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only." (Doc. 8-1, p. 6). In *Baker*, the court held that the arbitration agreement was illusory because the modification provision only included an advance written notice provision, which did not prevent the employer from making modifications in the midst of arbitration. 450 S.W.3d at 776-77. Yet, in *Colton*, the court held that the arbitration agreement was not illusory because the modification provision not only had an advance written notice requirement, but also specified that modifications applied "prospective[ly] only, and [did] not apply to any accrued or pending claims or disputes that [had] been initiated by either party." 2016 WL 3248578, at *3-4. While Citibank's modification provision is less explicit than the provision in *Colton*, the modification provision still appears to restrict modifications to future disputes, as it specifies that modifications "will apply prospectively only." (Doc. 8-1, p. 6). The modification provision also requires advance written notice of modifications to the employee. (*Id.*). "When an employer has unilateral power to modify a contract, but is limited to prospective modifications made with reasonable notice, this power does not render illusory any mutual promises to arbitrate." *Colton*, 2016 WL 3248578 at *3 (citing *Baker*, 450 S.W.3d at 777). Therefore, this Court finds that the arbitration agreement between Citibank and Mr. Shultz is not illusory because the modification provision sufficiently limits modifications to prospective claims. This Court finds that consideration supports this agreement, and the parties formed a valid agreement to arbitrate.

    C. **The arbitration agreement applies to Mr. Shultz's claims.**

The arbitration policy states that it applies to employment-related disputes. (*See* Doc. 8-1, p. 1). "[U]nless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration is mandated. *AT&T Techs., Inc. v. Comm'ns Workers of America*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of America*

*v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).  Mr. Shultz's claims clearly fall within the scope of the arbitration agreement, which Mr. Shultz does not dispute.

   D. **Citibank's failure to comply with the Missouri Uniform Arbitration Act ("MUAA") does not impact the enforceability of the arbitration agreement.**

Citibank argues that the MUAA is inapplicable because the arbitration agreement is governed by the FAA. (Doc. 14, pp. 7-8).  Mr. Shultz contends that Citibank's failure to comply with the MUAA, which requires arbitration agreements to contain a mandatory notice statement, renders the contract unenforceable. (Doc. 13, pp. 15-16).

According to Missouri law, "the § 435.460 notice requirement cannot be applied to circumvent an arbitration provision within the scope of the FAA." *Duggan v. Zip Mail Servs., Inc.*, 920 S.W.2d 200, 203 (Mo. Ct. App. 1996) (citing *Greenwood v. Sherfield*, 895 S.W.2d 169, 172-73 (Mo. Ct. App. 1995)).  Applying the MUAA to defeat arbitration "would place the state act above the federal act, violating the Supremacy Clause of the Constitution." *Id.*  Thus, this Court finds that a mandatory notice statement was not needed in the arbitration agreement at issue here.

## IV. Conclusion

For the reasons discussed herein, the Court finds that the arbitration agreement between Citibank and Mr. Shultz is enforceable with respect to Mr. Shultz's claims and these proceedings should be stayed pending arbitration.  Accordingly, Citibank's Motion to Compel Arbitration and Stay Proceedings (Doc. 7) is GRANTED.

   IT IS SO ORDERED.

   Dated this 28th day of May, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge